UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**JOHN BELDEN**                                                                                                   **PLAINTIFF**

**v.**                                 **CIVIL ACTION NO. 3:16CV-P511-TBR**

**SCOTT JORDAN** *et al.*                                                                           **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff John Belden, a convicted prisoner currently incarcerated at the Little Sandy Correctional Complex, filed a *pro se* complaint (DN 1) pursuant to 42 U.S.C. § 1983. The complaint is before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. For the reasons that follow, a portion of the claims will be dismissed, and a portion of the claims will continue.

**I.**

Plaintiff's complaints concern his prior incarceration at the Luther Luckett Correctional Complex (LLCC). He brings this action against the following officers and employees in their individual and official capacities: LLCC Warden Scott Jordan; LLCC Corrections Officer Ryan Ramey; Unknown LLCC "Responding Officers"; LLCC Adjustment Officer Jesse A. Catlett; LLCC Investigating Officer Preston Morrow; Nurse Practitioner Jeff Engrim employed by "Correct Care Solutions for LLCC"; Unknown "Responsible Health Care Staff" employed by "Correct Care Solution/Ky DOC."

In the complaint, Plaintiff raises several allegations. First, Plaintiff alleges that on April 28, 2016, Defendant Ramey verbally harassed him leading to a physical altercation, initially between only Plaintiff and Defendant Ramey, but then also involving several Unknown

Responding Officers. He alleges that he sustained a shoulder injury (bone was sticking out of his shoulder) and had swollen eyes. Plaintiff alleges an Eighth Amendment violation by Defendants Ramey and the Unknown LLCC Responding Officers and a state-law claim of intentional infliction of emotional distress against Defendant Ramey.

Second, Plaintiff alleges that following the altercation, he was taken to the special management unit (SMU), where he told "Medical staff working for [CCS]" that he had "'extreme pain in his shoulder.'" He claims that although the nursing staff saw his bone sticking out of his arm, he was not taken to the emergency room. Instead, they gave him "a temporary application of Ibuprofen" and did not order x-rays until 7 to 10 days after the incident, which Plaintiff reports showed "a Type 3 seperation of AC, due to separation ligiment damage and tearing . . . also plaintiff's Clavical (Collar bone) is displaced and ligiments that hold it in place . . . are torn and ligiment reconstruction surgery will be needed and reconstruction of shoulder." Plaintiff further reports that on June 25, 2016, he was seen by Dr. Jacobs, an orthopedic surgeon, who said, "'son, you should have been here that night' and that "'surgery must be done and soon, if not last month." He further reports that Dr. Jacobs stated that "in the best case recovery I would be at a 80-85% recovery rate in a year." Plaintiff alleges that due to the delay in treatment for his injuries, Defendant Engrim and Unknown Health Care Staff were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

Third, Plaintiff alleges that due to the April 28, 2016, altercation with staff, Defendant Ramey and non-Defendant Crawford filed incident reports against him. He "believes these two (2) officers if not more or even other 'Responding Officers' manipulated and set-up false reports to cover up facts and truth, otherwise fruadulant misconduct." He states that Defendant Morrow was tasked with investigating the incident reports but only spoke to Plaintiff and that Defendant

Morrow "put his version of a statement that 'legally never happened.'" He claims that Defendant Morrow stated, "'This is more work than I need,'" and would not complete the investigation. Instead, non-Defendant Sgt. Amanda Mason completed the investigation and charged Plaintiff with "7-01 Physical action against an employee" as to both Defendant Ramey and non-Defendant Crawford.

Plaintiff alleges that on May 10, 2016, Defendant Catlett "sat as the Chairman/Adjustment Officer" and amended the charge as related to non-Defendant Crawford to a "5.3 eluding apprehension," found Plaintiff guilty, and sentenced him to 60 days of disciplinary segregation and the loss of 45 days of good-time credits. Also on May 10, 2016, Defendant Catlett found Plaintiff guilty of "7-01 Physical action against an employee" as related to Defendant Ramey and sentenced him to 180 days of disciplinary segregation and the loss of 720 days of non-restorable good-time credits. Plaintiff claims that Defendant Catlett violated his due process rights by "not even calling witnesses at/or to hearing," by being "indifferent to plaintiffs request for witnesses, evidence," and by "not consider mitigating evidence." Plaintiff advises that he appealed both decisions to Defendant Jordan, who concurred with the results.

Finally, Plaintiff alleges that Defendant Jordan is "legally responsible for the operation" of LLCC; that he personally wrote Defendant Jordan regarding his complaints; and that he appealed his disciplinary decision to Defendant Jordan, who concurred with the adjustment committee.

As relief, Plaintiff seeks nominal, compensatory, and punitive damages and declaratory and injunctive relief. As injunctive relief, he seeks provision of current and future medical care

and treatment; transfer to the "Medical Prison, Kentucky State Reformitory";[1] restoration of "all nonrestorable good rime credits in the amount of 720 days back to [his] time calculation data and sentence"; and expungement of his "prison file and record intirely of the mentioning of the disciplinary Report."

## II.

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[1] The Court notes that Plaintiff was already incarcerated in the Kentucky State Reformatory at the time he filed his complaint.

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519 (1972), this duty to be less stringent "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require courts "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### A. Official-Capacity Claims for Damages Against LLCC Defendants

Plaintiff's claims for damages against LLCC Defendants in their official capacities must be dismissed. "Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Because Defendants are officers of the Commonwealth of Kentucky, the claims brought against them in their official capacities are deemed claims against the Commonwealth of

Kentucky. *See Kentucky v. Graham*, 473 U.S. at 166. State officials sued in their official capacities for damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, because Plaintiff seeks damages from state officers in their official capacities, he fails to allege cognizable claims against them under § 1983. Additionally, the Eleventh Amendment acts as a bar to claims for damages against the state Defendants in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169. For these reasons, the official-capacity claims for damages against the LLCC Defendants will be dismissed.

### B. Official-Capacity Claims against CCS Defendants

To the extent that Defendants Engrim and the Unknown Responsible Health Care Staff are employees of CCS, the official-capacity claims against them are actually against CCS. *See, e.g.*, *Griffin v. S. Health Partners, Inc.*, No. 1:12CV-P174-M, 2013 WL 530841, at *5 (W.D. Ky. Feb. 11, 2013). "It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)). For purposes of initial review, the Court presumes that CCS is a state actor. However, a private corporation, like CCS, "is not liable under § 1983 for torts committed by its employees when such liability is predicated solely upon a theory of respondeat superior." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). Rather, like a municipality, a private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well.").

In the instant case, Plaintiff has not alleged that CCS's medical staff acted pursuant to a policy or custom in causing any alleged harm. Nothing in the complaint demonstrates that the action or inaction of any medical personnel occurred as a result of a policy or custom implemented or endorsed by CCS. The complaint, therefore, fails to establish a basis of liability against CCS. Consequently, the official-capacity claims against Defendants Engrim and the Unknown Responsible Health Care Staff will be dismissed for failure to state a claim.

### C. Defendant Warden Jordan

Plaintiff alleges that Defendant Jordan is "legally responsible for the operation" of LLCC; that he personally wrote Defendant Jordan regarding his complaints; and that he appealed his disciplinary decisions to Defendant Jordan, who concurred with the adjustment committee. Plaintiff seeks to hold Defendant Jordan liable based on his supervisory position as Warden. The doctrine of *respondeat superior*, or the right to control employees, however, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Additionally, "simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation."). "[P]roof of personal involvement is required for a supervisor to incur personal liability." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (stating that supervisory liability "must be based on

active unconstitutional behavior and cannot be based upon 'a mere failure to act'") (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

Because Plaintiff fails to allege that Defendant Jordan was directly involved in any of the alleged wrongdoing, he fails to state a claim upon which relief can be granted against that Defendant.

### D.  Disciplinary Proceedings

Plaintiff alleges that Defendants Morrow and Catlett committed due process violations in investigating and adjudicating his disciplinary proceedings arising out of the April 2016 physical altercation with staff.  He reports that he was sentenced to disciplinary segregation and loss of good-time credits.

To state a Fourteenth Amendment due-process claim, an inmate must allege a deprivation of a liberty interest protected by the Due Process Clause.  To determine whether segregation of an inmate from the general prison population involves the deprivation of a protected liberty interest, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483 (1995).  Generally, no liberty interest in remaining free from disciplinary segregation will be found.  *Id.* at 484.  Therefore, Plaintiff's assignment to disciplinary segregation does not state a due process violation.

A restraint which "inevitably affect[s] the duration of [an inmate's] sentence" creates a liberty interest.  *Sandin v. Conner*, 515 U.S. at 487.  The loss of good-time credits affects the length of Plaintiff's prison sentence; thus he has a protected liberty interest in this regard. *Id.* at 477-78 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).  Even if the Court concluded that Plaintiff demonstrated liberty interests entitled to due-process protection, however, there is still a

barrier to his Fourteenth Amendment claim. A state prisoner may not file a § 1983 suit for damages or equitable relief challenging his conviction or sentence if a ruling on his claim would render the conviction or sentence invalid, until and unless the conviction or sentence has been reversed on direct appeal, expunged by Executive Order, declared invalid by a state tribunal, or has been called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). If a ruling on a claim would necessarily render the duration of Plaintiff's confinement invalid, the claim must be dismissed because it is simply not cognizable until the challenged confinement has been remedied by some other process. *Id.* at 487.

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the application of *Heck* to prison disciplinary proceedings. If the inmate's allegations would "necessarily imply the invalidity of the punishment imposed" the claim is not cognizable in a civil action under § 1983. *Id.* at 648. Furthermore, in *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court reemphasized that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81-82.

In the instant action, Plaintiff seeks damages, restoration of good-time credits, and expungement of his disciplinary record. Success on Plaintiff's claims concerning his prison disciplinary conviction would necessarily imply the invalidity of his confinement and therefore cannot be brought under § 1983. Accordingly, Plaintiff's due process claims concerning his prison disciplinary proceedings will be dismissed for failure to state a claim.

### E. Injunctive Relief Related to Medical Treatment

An inmate's claim for injunctive relief regarding the conditions of his confinement becomes moot due to his transfer to another facility. *See Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (holding that a prisoner's claims for injunctive relief became moot after he was transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same). Because Plaintiff is no longer incarcerated in the LLCC, his claims for injunctive relief related to his medical treatment are moot.

### F. Remaining Claims

Upon consideration, **the Court will allow the Eighth Amendment excessive-force claims to proceed against Defendants Ramey and the Unknown LLCC Responding Officers in their individual capacities for damages; the state-law claim of intentional infliction of emotional distress to continue against Defendant Ramey for damages; and the Eighth Amendment denial/delay of medical treatment claims to proceed against Defendant Engrim and the Unknown Responsible Health Care Staff in their individual capacities for damages**. In allowing these claims to continue, the Court passes no judgment on the merit and ultimate outcome of the case.

### III. ORDER

For the foregoing reasons,

**IT IS ORDERED** that the official-capacity claims for damages against the LLCC state Defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and § 1915A(b)(2) for seeking monetary relief from Defendants immune from such relief; that the official-capacity claims against the CCS Defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim

upon which relief may be granted; that the claims against Defendant Jordan are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; that the Fourteenth Amendment claim that Plaintiff was denied due process during disciplinary proceedings is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and that the claims for injunctive relief are **DISMISSED as moot**.

As all claims against Defendants Jordan, Catlett, and Morrow are dismissed, the **Clerk of Court is DIRECTED to terminate** them as a parties to this action.

The Court will enter a separate Order Regarding Service and Scheduling Order to govern the development of the remaining claims.

Date:


cc: Plaintiff, *pro se*
 Defendants
 General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.005